## GENSHEIMER v. DULLES.

### Civ. A. No. 1013–51.

United States District Court
D. New Jersey.
Jan. 22, 1954.

Meth & Wood, per Theodore S. Meth, Newark, N. J., for plaintiff.

William F. Tompkins, U. S. Atty., Newark, N. J., for defendant.

SMITH, District Judge.

This is a civil action under Section 503 of the Nationality Act of 1940, 8

U.S.C.A. § 903, now Section 360 of the Immigration and Nationality Act, 8 U. S.C.A. § 1503. The plaintiff seeks a judicial declaration that he is a citizen and national of the United States. The defendant urges the dismissal of the action on the ground that the plaintiff voluntarily expatriated himself. The only questions here raised have been fully answered by the United States Court of Appeals, Third Circuit, in two cases hereinafter cited.

### Facts

#### I.

The plaintiff was born in Elizabeth, New Jersey, on September 4, 1913, of foreign parents who were citizens and nationals of Germany. He resided in Elizabeth until April of 1920, when, after the death of his father in 1918, he was taken to Germany by his mother. Thereafter he resided in Germany continuously until September 26, 1951, when he entered the United States as a nonquota immigrant; he established permanent residence in Irvington, New Jersey, where he now resides.

#### II.

The plaintiff executed and filed a formal application for a United States passport at the office of the American Consular Service in Hamburg, Germany, on December 11, 1936. The application contained the usual oath of allegiance, to which the plaintiff subscribed before the Consul. It was then the intention of the plaintiff to return to the United States within one year and after he had completed his professional education and the required apprenticeship.

#### III.

The issuance of the passport was recommended by the Consul, and the plaintiff was so advised by letter on March 4, 1937. The plaintiff then made application to the German authorities for an "exit permit," but this application was denied because he had not completed eight weeks of military training, which was apparently required under the laws of Germany. The plaintiff took no further action to perfect his application and the passport was not issued.

#### IV.

The plaintiff was given notice in February of 1940 to report for induction into the armed forces of Germany under the conscription laws; he reported in response to the notice but was granted a deferment on the request of his employer. Thereafter, on March 17, 1940, the plaintiff was given a notice to report for service in the 649th Searchlight Battalion, a division of the German army, at Wesel; he reported to the "battalion commander" and was thereupon assigned to the "first battery." He informed the "battalion commander" that he was a citizen of the United States but did not protest his induction because he feared "reprisals"; it seems obvious, however, that such protest would have been futile under the circumstances.

#### V.

The law of Germany, promulgated in 1934, required "soldiers in the Wehrmacht" to take the following oath: "* * * that I will unconditionally obey Adolph Hitler, the Führer of the German Reich and people, and the Commander-in-Chief of the Wehrmacht, and will be willing as a brave soldier to sacrifice my life at any time for this oath." The plaintiff testified, however, that the oath was not administered and that he took no oath of allegiance at the time of his induction; his explanation (transcript of testimony, pages 18, 19 and 20) is credible, and we are inclined to accept it as true. Whether or not the plaintiff took the prescribed oath is immaterial; the oath was a concomitant of his conscription, and if it was taken, it was taken under circumstances clearly tantamount to duress.

#### VI.

The plaintiff served in the armed forces of Germany until April 10, 1945, when he deserted and reported to the 354th Overseas Transportation Division

of the United States Army at "Bad Blankenburg, in Thuringia." He was held as a prisoner of war for several weeks and then released. Approximately four weeks after his release the plaintiff was employed by the Property Control Department of the United States Military Government; he remained in the employ of this department until April of 1950, when he was discharged.

## VII.

It appears from the testimony of the plaintiff and the documentary evidence offered by the defendant that the plaintiff, by letter addressed to the American Consulate General, Frankfort-on-Main, Germany, on September 25, 1946, made an informal application for permission "to proceed to the United States as an American citizen." This application was denied on the ground that the plaintiff "expatriated himself in March 1940 when, after reaching the age of twenty-one, he served in the German Army which necessitated his taking an oath of allegiance to Germany."

### Discussion

■ The plaintiff possessed dual citizenship and nationality under familiar principles of law from the time of his birth. He was a citizen and national of the United States by virtue of his nativity in this country, Section 1 of the Fourteenth Amendment, and a citizen and national of Germany by virtue of his parentage. The status of the plaintiff as a citizen and national of the United States must be deemed to continue unless he has been deprived of it by his voluntary action in conformity with applicable legal principles. Perkins v. Elg, 307 U.S. 325, 329, 59 S.Ct. 884, 83 L.Ed. 1320; Tomoya Kawakita v. United States, 343 U.S. 717, 734, 72 S.Ct. 950, 96 L.Ed. 1249; Mandoli v. Acheson, 344 U.S. 133, 73 S.Ct. 135; and the other cases hereinafter cited. It is now well established that expatriation can be the consequence of only "voluntary renunciation or abandonment of nationality and allegiance." [307 U.S. 325, 59 S.Ct. 889.]

The defendant urges that the plaintiff expatriated himself under the Expatriation Act of March 2, 1907, 34 Stat. 1228, now Section 349 of the Immigration and Nationality Act, 8 U.S.C.A. § 1481, when he took an oath of allegiance upon his induction into the armed forces of Germany. Notwithstanding our finding to the contrary, we shall assume for the purpose of discussion that such an oath was taken. The assumption, however, will not avail the defendant.

■ The pertinent provision of the said Act reads as follows: "* * * any American citizen shall be deemed to have expatriated himself * * * when he has taken an oath of allegiance to any foreign state." 34 Stat. 1228. This provision, like others of the same Act, established a statutory presumption, which is applicable only when the act of the "citizen" is voluntary; it is not applicable where, as here, the oath of allegiance is the concomitant of the "citizen's" conscription into the armed forces of a foreign country. See the cases hereinafter cited.

■ The defendant further urges that the plaintiff expatriated himself under Section 401 of the Nationality Act of 1940, 8 U.S.C.A. § 801, now Section 349 of the Immigration and Nationality Act, supra, by his continued service in the armed forces of Germany after the effective date of the Act. The pertinent provision of this Act reads as follows: "A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by: * * * (c) Entering, or serving in, the armed forces of a foreign state unless expressly authorized by the laws of the United States, if he has or acquires the nationality of such foreign state". It has been uniformly held that this "language is to be qualified, however, by the settled doctrine * * * that expatriation can be the consequence only of voluntary action." Perri v. Dulles, 3 Cir., 206 F.2d 586, 589; Lehmann v. Acheson, 3 Cir., 206 F.2d 592, 594; Pandolfo v. Acheson, 2 Cir., 202 F.2d 38; Acheson v. Maenza, D.C.Cir., 202

F.2d 453; Podea v. Acheson, 2 Cir., 179 F.2d 306; Dos Reis ex rel. Camara v. Nicolls, 1 Cir., 161 F.2d 860; Scardino v. Acheson, D.C., 113 F.Supp. 754. The only questions here raised by the arguments of the defendant are fully and adequately answered in the cited cases.

The defendant argues that the action should be dismissed because of the failure of the plaintiff to prove that his service in the armed forces of Germany was involuntary. The argument is without merit. The plaintiff sustained the burden of proof cast upon him by the law. He proved, first, that he was a citizen and national of the United States by birth, and a citizen and national of Germany by parentage; and, second, that he was inducted into the armed services of Germany under its conscription laws; no further proof was required. It has been held by the United States Court of Appeals for this Circuit that service in the armed forces of a foreign country under such circumstances is presumed to be involuntary. Perri v. Dulles, 3 Cir., 206 F.2d 586, 589; Lehmann v. Acheson, 3 Cir., 206 F.2d 592, 598; see also the other cases hereinabove cited.

The plaintiff having established a prima facie case sufficient to support his claim to citizenship, the burden was then upon the defendant to prove by clear, unequivocal and convincing evidence that the plaintiff expatriated himself by voluntary service in the armed forces of Germany. Perri v. Dulles, and Lehmann v. Acheson, supra. The defendant failed to sustain this burden.

### Conclusions

#### I.

The plaintiff is, and was from the time of his birth, a citizen and national of the United States under Section 1 of the Fourteenth Amendment to the Constitution. The citizenship and nationality thus acquired was retained by him notwithstanding his service in the armed forces of Germany. The plaintiff's military service was involuntary, and therefore did not effect his expatriation.

#### II.

The plaintiff did not take the oath of allegiance required by the laws of Germany. However, if such an oath was taken, it was the concomitant of his conscription, and, like his subsequent military service, involuntary, and therefore could not effect his expatriation.

#### III.

A judgment in favor of the plaintiff and against the defendant may be entered. The plaintiff will prepare and submit to the Court, on notice to the defendant, an order for judgment.