**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-1460
_____

UNITED STATES OF AMERICA

v.

CLAUDIA LORENA MARQUEZ MORENO,

Appellant.

_____

On Appeal from the District Court of the Virgin Islands
(Division of St. Thomas)
(D. C. No. 3-11-cr-00017-001)
District Judge:  Honorable Curtis V. Gomez

_____

Argued on December 3, 2012

Before:  SMITH, HARDIMAN and ROTH, <u>Circuit Judges</u>

(Opinion filed:  July 3, 2013)

David J. Cattie, Esquire **(Argued)**
The Cattie Law Firm, P. C.
2329 Commandant Gade, Unit 3
St. Thomas, USVI  00802

        Counsel for Appellant


Ronald W. Sharpe, Esquire
United States Attorney for the
District of the Virgin Islands
Kelly B. Lake, Esquire **(Argued)**
Assistant United States Attorney
United States Courthouse
5500 Veteran's Drive, Suite 260
St. Thomas, USVI  00802

        Counsel for Appellee

---

O P I N I O N

---

**ROTH**, <u>Circuit Judge</u>:

Claudia Marquez Moreno appeals her conviction for falsely and willfully representing herself as a United States citizen in violation of 18 U.S.C. § 911.  Her principal argument is that her validly issued passport constitutes conclusive proof of U.S. citizenship under 22 U.S.C. § 2705.  For this reason, she alleges that the government failed to prove lack of citizenship and that the District Court erred in

denying her motion for acquittal. Because we hold that, under the language of 22 U.S.C. § 2705, a passport constitutes conclusive proof of citizenship *only* if the passport was issued to a U.S. citizen, we will affirm the District Court's judgment.

I.

Moreno was born in Mexico in 1971. She was adopted by a U.S. citizen when she was nine years old. In 1981, New Mexico issued her a certificate of live birth indicating that her place of birth was Mexico. In 1994, Moreno was convicted of possession with intent to distribute a controlled substance. In 1998, she was convicted of false imprisonment. In 2006, she was deported to Mexico, after an immigration judge, the Board of Immigration Appeals, and the Fifth Circuit found that she was not a U.S. citizen. *Marquez-Moreno v. Gonzales*, 455 F.3d 548, 560 (5th Cir. 2006). Although she was prohibited from reentering the United States without permission, she returned to the United States in 2007.

In 2007, Moreno applied to the State Department for a passport, listing her place of birth as New Mexico. The State Department issued Moreno a valid passport. In 2008, Moreno's passport was confiscated by United States Border Patrol in El Paso, Texas. However, it was never revoked. In 2010, she was placed into Immigration and Customs Enforcement (ICE) custody pending deportation, but she was released pending further investigation and action by the State Department when Department of Homeland Security (DHS) officials discovered that she had been issued a valid passport.

In March 2011, before taking a trip to St. Thomas,

3

Moreno contacted a DHS official to determine whether she was a U.S. citizen. She was told that she was not a citizen. On March 16, 2011, when she arrived in St. Thomas after taking a cruise to a neighboring island, she was asked by an immigration officer about her citizenship. She responded that she was a U.S. citizen and presented her New Mexico driver's license. The officer contacted a DHS agent who then interviewed Moreno. When he asked her about her citizenship, she responded that she was a U.S. citizen and presented a certificate of live birth from the state of New Mexico, a New Mexico driver's license, and a copy of her U.S. passport.

Moreno was arrested and indicted for falsely representing herself to be a U.S. citizen, in violation of 18 U.S.C. § 911, which states: "[w]hoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both." 18 U.S.C. § 911. As the District Court instructed the jury at the trial, the three elements of a § 911 violation are (1) that the defendant knowingly and falsely represented herself to be a United States citizen, (2) that she was not a citizen at the time of her representation, and (3) that she made the false representation willfully.

At 7 p.m. the day before trial, the government disclosed two documents to Moreno: (1) a DHS report describing an investigation concluding that Moreno's passport was valid but recommending further investigation into her citizenship, and (2) a DHS report stating that Moreno should be released into the United States and that her deportation should be stayed until the State Department revoked her passport. Moreno did not request a continuance,

4

even though one was offered by the District Court. The District Court did not admit either document into evidence and rejected Moreno's claim of a *Brady* violation on the grounds that the information in the reports did not contain exculpatory information and that the same information had been previously disclosed.

During the trial, Moreno also sought to introduce her FBI criminal history report, which listed her citizenship as "United States," and an accompanying FOIA letter. The District Court, however, denied her motion on the grounds that under Federal Rule of Evidence 403 the evidence was cumulative and could confuse the jury.

Moreno's principal defense was that she had been issued a valid U.S. passport and that the passport constituted conclusive evidence of citizenship. The government conceded that the passport had never been revoked. Nevertheless, the government argued to the District Court and the jury that the passport was "issued in error." Moreno objected to this argument on the grounds that the government impermissibly took inconsistent positions as to the passport's status.

Moreno requested that the District Court instruct the jury that a passport "is conclusive evidence of U.S. citizenship." The District Court refused to issue this instruction. Moreno then filed a Rule 29 motion for acquittal, which the District Court also denied. Moreno was convicted of violating 18 U.S.C. § 911 and was sentenced to twenty-nine months imprisonment. This appeal followed.

## II.[1]

### A.

Moreno argues on appeal that (1) the District Court should have granted her motion for acquittal because, under 22 U.S.C. § 2705, her validly issued passport constituted conclusive proof of citizenship and (2) the District Court should have instructed the jury that her passport was conclusive proof of citizenship. We hold that a passport constitutes conclusive proof of citizenship under 22 U.S.C. § 2705 only if it has been issued to a U.S. citizen. For that reason, the District Court did not err in denying Moreno's Rule 29 motion for acquittal or in refusing to adopt Moreno's proposed jury instruction.

### 1.

We exercise plenary review over the denial of a motion for acquittal. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006). However, we "review the record in the light more favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." *Id.*

Moreno argues that her U.S. passport constituted conclusive proof of her U.S. citizenship under 22 U.S.C. § 2705 and that therefore the government failed to prove lack of citizenship, a necessary element of a § 911 violation. 22

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction under 28 U.S.C. § 1291.

U.S.C. § 2705 provides:

> The following documents shall have the same force and effect as proof of United States citizenship as certificates of naturalization or of citizenship issued by the Attorney General or by a court having naturalization jurisdiction: (1) A passport, during its period of validity (if such period is the maximum period authorized by law), issued by the Secretary of State to a citizen of the United States. . . .

22 U.S.C. § 2705.

The text of 22 U.S.C. § 2705 does not permit Moreno's interpretation. In any case involving statutory interpretation, we must begin with the statutory text. *See United States v. Gonzales*, 520 U.S. 1, 4 (1997). "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the test is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (citations omitted). "An interpretation is absurd when it defies rationality or renders the statute nonsensical and superfluous." *United States v. Fontaine*, 697 F.3d 221, 228 (3d Cir. 2012) (citations and internal quotation marks omitted).[2]

---

[2] The Court should look to the statute's legislative history only if the text of the statute is ambiguous. *Gonzales*, 520 U.S. at 6. Moreover, there is no legislative history here

By its text, § 2705 provides that a passport will serve as conclusive proof of citizenship only if it was "issued by the Secretary of State *to a citizen of the United States.*" 22 U.S.C. § 2705 (emphasis added). Under the plain meaning of the statute, a passport is proof of citizenship only if its holder was actually a citizen of the United States when the passport was issued. Under the language of the statute, the logical premise needed to establish conclusive proof of citizenship consists of two independent conditions: (1) having a valid passport and (2) being a U.S. citizen. The second condition is not necessarily satisfied when the first condition is satisfied. For example, the Secretary of State issues passports not only to U.S. citizens but also to U.S. nationals. *See* 22 C.F.R. § 50.4 (noting that United States nationals may apply for a United States passport); *see also* 8 U.S.C. § 1101(22) ("The term 'national of the United States' means (A) a citizen of the United States, or (B) a person who, though not a citizen of the United States, owes permanent allegiance to the United States.").

Here, Moreno satisfies the first condition but not the second: she has a valid U.S. passport but is not a U.S. citizen—and was not one at the time the passport was issued.

---

guiding the inquiry into the scope of § 2705. *See Magnuson v. Baker*, 911 F.2d 330, 334 n.8 (9th Cir. 1990) (noting that the statute was enacted without controversy in 1982 after a Congressman sent a question to the State Department and received a response stating that the State Department and INS would support legislation to make a passport evidence of citizenship).

As a result, this textual interpretation of the statute leads to the conclusion that the District Court properly denied Moreno's Rule 29 motion for acquittal because, under § 2705, a valid U.S. passport serves as conclusive proof of U.S. citizenship only if the passport was issued to a U.S. citizen, which Moreno is not.

This is an issue of first impression in the Third Circuit. Moreno argues that other courts that have interpreted § 2705 as establishing that a valid passport is conclusive proof of U.S. citizenship. *See, e.g., Vana v. Att'y Gen.*, 341 F. App'x 836, 839 (3d Cir. 2009) (per curiam) ("[A] United States passport is considered to be conclusive proof of United States citizenship . . . ."); *Magnuson v. Baker*, 911 F.2d 330, 333 (9th Cir. 1990) ("[T]hrough section 2705, Congress authorized passport holders to use the passport as conclusive proof of citizenship.") (dictum); *Edwards v. Bryson*, 884 F. Supp. 2d 202, 206 (E.D. Pa. 2012) (finding the holder of an expired valid U.S. passport to be a U.S. citizen and reasoning that "[t]o hold otherwise, would lessen the import of a passport as compared to that of a certificate of naturalization or a certificate of citizenship, which is exactly what § 2705 forbids . . . ."); *United States v. Clarke*, 628 F. Supp. 2d 15, 21 (D.D.C. 2009) ("§ 2705 puts passports in the same status as certificates of naturalization for the purpose of proving U.S. citizenship."); *In re Villanueva*, 19 I. & N. Dec. 101, 103 (B.I.A. 1984) ("Accordingly, we hold that unless void on its face, a valid United States passport issued to an individual as a citizen of the United States is not subject to collateral attack in administrative immigration proceedings but constitutes conclusive proof of such person's United States citizenship.").

However, we are not bound by these cases and believe that this interpretation is atextual because it effectively reads the phrase "to a citizen of the United States" out of the statute. Thus, it does not give effect to the statute as written.[3] "[W]here the text of a statute is unambiguous, the statute should be enforced as written and only the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 314 (3d Cir. 2010) (citation and internal quotation marks omitted). Because the text of § 2705 is unambiguous, we hold that a passport is conclusive proof of citizenship only if its holder was actually a citizen of the United States when it was issued.

Judge Smith asserts in his dissenting opinion that the relevant inquiry under § 2705 is not whether the passport holder is a U.S. citizen but rather whether the State Department has determined the passport holder to be a U.S. citizen. (Dissenting Op. at 4). We disagree. Such a reading elevates the State Department's role in the determination of citizenship beyond its historic status. Traditionally, citizenship can be proved by: (1) certificate of naturalization; (2) certificate of citizenship; or (3) birth certificate. Certificates of naturalization and certificates of citizenship are granted by a court having naturalization jurisdiction or by the

---

[3] Moreover, none of these cases addressed the precise question presented here: whether § 2705 constitutes conclusive proof of citizenship in the context of a prosecution under 18 U.S.C. § 911. In fact, as the Eighth Circuit noted in *Keil v. Triveline*, "no court has held that possession of a passport precludes prosecution under [18 U.S.C.] § 911." 661 F.3d 981, 987 (8th Cir. 2011).

10

Attorney General. *See* 8 U.S.C. § 1443(e); *see also Magnuson*, 911 F.2d at 333; *Clarke*, 628 F. Supp. 2d at 17-18. While the State Department historically has had exclusive authority to grant and revoke passports, 22 U.S.C. § 211a; 8 U.S.C. § 1504, it has not had the power to determine citizenship. *See Magnuson*, 911 F.2d at 333 ("Prior to the enactment of section 2705, only the Attorney General or a naturalization court could determine who is a citizen of the United States."). We should not let § 2705, a statute with a thin and peculiar legislative history, *see supra* note 2, overwhelm the historic way of determining citizenship.[4] Our reading of § 2705 gives effect to the statute as written but does not go so far as to empower the State Department to determine citizenship through the issuance of a passport.

For these reasons, the District Court did not err in denying Moreno's Rule 29 motion for acquittal.[5]

---

[4] We acknowledge that the Ninth Circuit took a different position in *Magnuson*, stating that "by section 2705, Congress has vested the power in the Secretary of State to determine who is a United States citizen." 911 F.2d at 333. Again, we are not bound by this case and do not find it persuasive.

[5] Moreno also argues that the government failed to show that Moreno made a false assertion of citizenship willfully. This argument is meritless. In 2006, she was deported after an immigration judge, the Board of Immigration Appeals, and the Fifth Circuit found that she was not a U.S. citizen. *Marquez-Moreno*, 455 F.3d at 560. In 2008, her passport was confiscated. Immediately prior to her trip to St. Thomas in March 2011, a DHS official informed her that she was not a citizen. Despite receiving all of these notifications that she was not a U.S. citizen, Moreno asserted that she was a U.S.

11

2.

Moreno also argues that the District Court should have used her proposed jury instruction stating that "[a] passport issued by the Secretary of State is conclusive proof of United States citizenship." "We exercise plenary review to determine whether jury instructions misstated the applicable law, but in the absence of a misstatement we review for abuse of discretion." *United States v. Hoffecker*, 530 F.3d 137, 173-74 (3d Cir. 2008) (citation and internal quotation marks omitted). Because we find that a valid passport is conclusive proof of U.S. citizenship under 22 U.S.C. § 2705 only if its holder was actually a citizen when it was issued, the District Court properly declined to adopt Moreno's proposed instruction.

B.

Moreno raises three additional arguments on appeal: (1) the District Court should have ruled that the government's untimely disclosure of reports regarding the validity of her passport violated *Brady*; (2) the District Court should have allowed Moreno to introduce FOIA documents and an FBI report listing her citizenship as "United States"; and (3) the District Court should have ruled that the government engaged in misconduct by stating that Moreno's passport had been "issued in error" despite acknowledging that the passport had not been revoked. We find that none of these arguments merit reversal of the District Court's judgment.

---

citizen when interviewed in St. Thomas. Therefore, the government presented sufficient evidence for the jury to conclude that Moreno's misrepresentation was willful.

12

1.

Moreno argues that the disclosure of documents at 7 p.m. on the day before trial violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In reviewing *Brady* claims, we review the District Court's conclusions of law de novo and its findings of fact for clear error. *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006).

The government has an obligation to disclose any evidence favorable to the defense that is material as to guilt or punishment. *Brady*, 373 U.S. at 87. "Where the government makes *Brady* evidence available during the course of a trial in such a way that a defendant is able effectively to use it, due process is not violated and *Brady* is not contravened." *United States v. Johnson*, 816 F.2d 918, 924 (3d Cir. 1987). *Brady* is not implicated if there is no prejudice to the defendant. *See United States v. Bansal*, 663 F.3d 634, 670 (3d Cir. 2011).

Here, the two documents, a DHS report describing an investigation concluding that Moreno's passport was valid but recommending further investigation into her citizenship and a DHS report stating that Moreno should be released into the United States and that her deportation should be stayed until the State Department revoked her passport, were made available to Moreno before trial. Moreno had the opportunity to cross-examine a government witness about the contents of the documents. Further, Moreno did not request a continuance, even though the District Court offered one. Moreno therefore cannot establish a *Brady* violation because she was able to use the documents and suffered no prejudice as a result of the government's allegedly untimely disclosure.

13

2.

Moreno argues that the District Court should have allowed her to introduce FOIA documents and an FBI report listing her citizenship as "United States." The District Court excluded these documents under Rule 403. "We review a district court's decision to admit or exclude evidence for abuse of discretion, and such discretion is construed especially broadly in the context of Rule 403." *United States v. Kemp*, 500 F.3d 257, 295 (3d Cir. 2007) (citation and internal quotation marks omitted). "In order to justify reversal, a district court's analysis and resulting conclusion must be arbitrary or irrational." *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 665 (3d Cir. 2000) (en banc) (citation and internal quotation marks omitted).

The documents Moreno sought to introduce into evidence listed her citizenship as "United States," but the jury had already heard testimony about government documents listing her as a United States citizen, making this evidence cumulative. Moreover, the documents also listed Moreno's criminal history, including multiple arrests and convictions. Thus, the documents would have had to be heavily redacted if they were to be presented to the jury, which could cause juror confusion. These facts do not show that the District Court abused its discretion in excluding these documents under Rule 403.

3.

Moreno argues that the District Court should have ruled that the government engaged in misconduct by stating that Moreno's passport had been "issued in error" despite

14

acknowledging that the passport had not been revoked. Moreno made a timely objection at trial. This Court reviews contemporaneous objections of prosecutorial misconduct for abuse of discretion. *See United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003).

Moreno claims that the doctrine of judicial estoppel should have precluded the government from arguing that the passport was issued in error after having conceded at another point that Moreno's passport had never been officially revoked. *See Whiting v. Krassner*, 391 F.3d 540, 543 (3d Cir. 2004) ("Judicial estoppel prevents parties from taking different positions on matters in litigation to gain advantage." (citation omitted)). Moreno's argument is unavailing because a "revoked" passport is distinct from a passport "issued in error." Under 8 U.S.C. § 1504, the Secretary of State may revoke a passport issued in error. However, passports issued in error are not automatically revoked. *See* 8 U.S.C. § 1504 (noting steps to be taken to revoke a passport). As a result, the government's position that the passport was never revoked is not inconsistent with the statement that the passport was issued in error. Therefore, Moreno's claim of misconduct fails because the government did not take inconsistent positions at trial.

III.

For the foregoing reasons, we will affirm the District Court's judgment.

15

*United States v. Moreno*, No. 12-1460

SMITH, *Circuit Judge*, dissenting.

My colleagues and I agree that Claudia Moreno acquired her passport through mendacity. Bad facts, however, should not cause us to rewrite a statute. In my view, 22 U.S.C. § 2705(1) requires us to treat Moreno's passport as conclusive evidence of her U.S. citizenship. For that reason, I respectfully dissent.

The majority's reading of § 2705 contains a critical flaw—one that eviscerates the statute. To see the flaw, one needs simply to restate the holding: "a passport constitutes conclusive proof of citizenship *only* if the passport was issued to a U.S. citizen." Majority Op. at 3. In other words, a person can use a passport as conclusive evidence that she is a U.S. citizen only if she first proves that she is a U.S. citizen. At that point, of course, conclusive evidence of citizenship is unnecessary, and so the statute becomes inoperative by depriving passports of any special evidentiary value. This reading is "at odds with one of the most basic interpretive canons, that '[a] statute should be construed . . . so that no part will be inoperative or superfluous, void or insignificant.'" *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). Congress surely did not intend to pass a statute without any legal effect.

1

No other circuit has said that § 2705 requires a preliminary showing that the passport holder is a U.S. citizen. Not one. Instead, most courts have said that passports have the same evidentiary effect as certificates of naturalization, which are conclusive proof of citizenship and are not subject to collateral attack. *E.g.*, *Magnuson v. Baker*, 911 F.2d 330, 333 (9th Cir. 1990) ("The statute plainly states that a passport has the same force and effect as a certificate of naturalization or citizenship . . . . The holders of these other documents can use them as conclusive evidence of citizenship. Therefore, so can a holder of a passport."); *Edwards v. Bryson*, 884 F. Supp. 2d 202, 206 (E.D. Pa. 2012); *United States v. Clarke*, 628 F. Supp. 2d 15, 21 (D.D.C. 2009); *Banchong v. Kane*, No. CV-09-0582-PHX-MHM (JRI), 2009 WL 6496505, at *5 (D. Ariz. Dec. 23, 2009); *Matter of Villanueva*, 19 I. & N. Dec. 101, 103 (B.I.A. 1984). Indeed, we have said as much in an admittedly nonprecedential opinion. *Vana v. Att'y Gen. of U.S.*, 341 F. App'x 836, 839 (3d Cir. 2009) (per curiam).[*] To be sure, the Eighth Circuit has suggested that passports offer no protection in crimi-

---

[*] Although "[t]he Court by tradition does not cite [ ] its not precedential opinions as authority," Third Circuit I.O.P. 5.7, I cite *Vana* merely to point out the intracircuit conflict created by the majority.

nal cases, but even it acknowledged that passports would be "conclusive proof of citizenship in administrative immigration proceedings." *Keil v. Triveline*, 661 F.3d 981, 987 (8th Cir. 2011).

The majority goes well beyond any of these cases. Through its reading of the requirement that passports be "issued by the Secretary of State to a citizen of the United States," the majority suggests that passports are not conclusive evidence of citizenship in any proceeding—a suggestion that creates a circuit split.

How then to interpret this requirement without effectively rewriting the statute? The answer is straightforward, but it requires us to recognize that citizens are not the only ones who hold passports. The State Department may issue passports to noncitizens "owing allegiance . . . to the United States." 8 U.S.C. § 212. Such passports specify that "[t]he bearer is a United States national and not a United States citizen." U.S. Dep't of State, 7 Foreign Aff. Manual § 1141(e) (Mar. 5, 2013), http://www.state.gov/documents/organization/86758.pdf. The phrase "citizen of the United States" in § 2705 thus has the effect of preventing those determined by the State Department to be noncitizen nationals from using their passports as conclusive evidence of U.S. citizenship. At the same time, it allows those determined to be citizens to use their passports as conclusive evidence of their citi-

3

zenship. *See Mondaca-Vega v. Holder*, No. CV-04-339-FVS, 2011 WL 1195877, at \*1 (E.D. Wash. Mar. 29, 2011) (concluding that § 2705 requires a passport holder to show that "*the Secretary of State has previously determined* he is a United States citizen" (emphasis added)). In short, the inquiry is whether the State Department has *determined* the passport holder to be a U.S. citizen, not whether she actually is one.

That is consistent with the idea that Congress has "centralize[d] passport authority . . . specifically in the Secretary of State." *Haig v. Agee*, 453 U.S. 280, 294–99 (1981) (noting similarities between the original Passport Act and the current scheme). For example, the State Department has exclusive authority to grant and revoke passports, 22 U.S.C. § 211a; 8 U.S.C. § 1504(a), to limit their period of validity, 22 U.S.C. § 217a, and to set fees, *id.* § 214. *See also Zivotofsky v. Clinton*, 132 S. Ct. 1421, 1436 (2012) (Alito, J., concurring) (recognizing the executive branch's historical authority over passports). In fact, the State Department may revoke passports that were obtained through error or fraud. *See* 8 U.S.C. § 1504(a); 22 C.F.R. § 51.62. Such passports become invalid and lose their conclusive evidentiary status. *See* 22 C.F.R. § 51.4(f)(1); 22 U.S.C. § 2705 (limiting a passport's conclusive proof of citizenship to its "period of validity"). Section 2705 thus strengthens the State Department's authority over passports by preventing courts

4

from second-guessing its decisions.

And that is precisely where the District Court went wrong. Moreno still has a valid passport, so the Court should have granted her motion for acquittal. If the prosecutors wanted to go after Moreno, they should have asked the State Department to revoke her passport.

I respectfully dissent.

5